Andrea Issod (CA Bar No. 230920)
Jim Dennison (*Pro Hac Vice* Application Forthcoming, CO Bar No. 52843)
SIERRA CLUB
2101 Webster Street, Suite 1300
Oakland, CA 94612
Telephone: (415) 977-5544
Telephone: (435) 232-5784
andrea.issod@sierraclub.org
jim.dennison@sierraclub.org

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| SIERRA CLUB, | Case No. _____ |
| Plaintiff, | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| vs. | |
| DEPARTMENT OF TRANSPORTATION, | Freedom of Information Act, 5 U.S.C. § 552. |
| Defendant. | |

Plaintiff Sierra Club, through counsel, alleges as follows:

**INTRODUCTION**

1.      Defendant Department of Transportation (DOT, or the agency) has violated the Freedom of Information Act (FOIA), 5 U.S.C. § 552, by failing to produce records about the agency's freeze of Congressionally-appropriated funds for electric vehicle charging and infrastructure and low-carbon transportation materials, as well as communications between agency officials and key external influencers.

2.      DOT has frozen disbursement of funds appropriated by Congress through the Infrastructure Investment and Jobs Act of 2021 and the Inflation Reduction Act of 2022 for three critical programs: the National Electric Vehicle Infrastructure (NEVI) Formula Program, the Charging and Fueling Infrastructure (CFI) grant program, and the Low-Carbon Transportation Materials grants program. Congress created the NEVI and CFI programs to establish a nationwide network of fast, reliable electric charging stations to support long-distance electric vehicle travel and encourage clean vehicle adoption. The Low-Carbon program supports agencies' purchase of construction materials – such as steel, concrete, and asphalt - that generate less pollution.

3.      DOT froze these funds pursuant to the "Unleashing American Energy" Executive Order, a now-rescinded Office of Management and Budget memorandum, and related DOT memoranda. Despite court orders enjoining the freeze for certain funds and programs, much of the funding remains inaccessible. This continued freeze has disrupted vital government operations and services, including those related to public health and environmental protection.

4.      Sierra Club is the nation's oldest grassroots environmental organization dedicated to protecting public health and the environment. Sierra Club is committed to protecting its members from the harms of climate change and air pollution, including pollution from the transportation sector, and advocates to reduce harmful emissions from vehicles and for a swift transition to zero-emission

electric vehicles. This includes supporting policies and programs that reduce barriers to electric vehicle use, such as expanded access to reliable charging infrastructure. Sierra Club and its members also have a longstanding interest in governmental accountability and transparency, as well as in educating and mobilizing the public on environmental and public health issues. To further its interests, Sierra Club submitted two FOIA requests to DOT seeking documents regarding the withholding of critical federal funds and communications with external parties.

5. Under FOIA, DOT was required to issue determinations within twenty business days of receiving Sierra Club's requests, indicating whether responsive records exist and whether they would be disclosed. FOIA further mandates that responsive records be produced promptly thereafter.

6. Despite repeated follow-up inquiries from Sierra Club, DOT has failed to comply with FOIA's statutory deadlines. The agency has not issued determinations on the requests, provided an estimated completion date, produced any documents, or offered a justification for withholding records. Each of these failures constitutes a violation of FOIA.

7. Sierra Club therefore brings this action seeking injunctive, declaratory, and other appropriate relief to compel DOT's compliance with FOIA and remedy its unlawful withholding of public records.

**JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT**

8. This Court has jurisdiction over this matter pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

9. Venue is proper in this Court under 5 U.S.C. § 552(a)(4)(B) because Plaintiff Sierra Club has its principal place of business in Oakland, California.

10. For the same reason, intra-district assignment is proper in the Oakland Division. *See* Civil L.R. 3-2.

11.    This Court may issue a declaratory judgment, provide injunctive relief from withholding records and order the production of such records, and grant other equitable relief as the Court may deem just and proper. 5 U.S.C. § 552(a)(4)(B); 28 U.S.C. § 2202.

12.    This Court may award attorney fees and litigation costs pursuant to 5 U.S.C. § 552(a)(4)(E).

**PARTIES**

13.    Plaintiff Sierra Club is incorporated in the State of California as a nonprofit public benefit corporation with headquarters in Oakland, California. Sierra Club is the nation's oldest environmental grassroots organization and has more than 613,000 members nationwide. Sierra Club is dedicated to protecting and preserving the natural and human environment, and its purpose is to explore, enjoy, and protect the wild places of the earth; to practice and promote the responsible use of the earth's ecosystems and resources; and to educate and enlist humanity to protect and restore the quality of the natural and human environments.

14.    Sierra Club is committed to protecting its members from the harms of climate change and air pollution, including pollution from the transportation sector. It advocates for reducing harmful emissions from vehicles and for a rapid transition to zero-emission electric vehicles. This includes supporting policies and programs that reduce barriers to electric vehicle adoption, such as expanded access to reliable charging infrastructure. Sierra Club and its members also have a longstanding interest in governmental accountability and transparency, as well as in educating and mobilizing the public on environmental and public health issues.

15.    Sierra Club submitted the FOIA requests at issue in this case to DOT in support of those interests.

16.    Sierra Club routinely uses FOIA to obtain information from federal agencies, which Sierra Club's legal and policy experts analyze to inform their members and the public about

3
COMPLAINT

environmental and public health issues. Sierra Club disseminates key findings to its members and the public through press releases and publications with wide circulation, such as *Sierra Magazine*, and by posting the documents obtained through FOIA requests on its website and on a publicly searchable database maintained by another organization (https://edgifoia.toxicdocs.org/). Sierra Club also uses information obtained through FOIA requests to support its advocacy for policies that protect public health and the environment.

17.     Sierra Club brings this action on its behalf and behalf of its members. Sierra Club and its members have been and continue to be harmed by DOT's failure to respond to Sierra Club's requests within the statutory timeframes mandated by FOIA. DOT's withholding of critical information—regarding the freeze of Congressionally-appropriated funds for electric vehicle charging infrastructure, low-carbon transportation materials, and the potential influence of external actors—undermines Sierra Club's mission. Specifically, the agency's inaction impairs Sierra Club's ability to educate the public about urgent environmental and public health issues and to advocate for responsive, protective policies, including the restoration of critical funds for electric vehicle charging and low-carbon construction materials. The relief requested in this action will redress these injuries.

18.     Defendant Department of Transportation (DOT, or the agency) is an agency of the executive branch of the United States government within the meaning of 5 U.S.C. § 551(1). DOT subagencies include the Federal Highway Administration (FHWA), the National Highway Traffic Safety Administration (NHTSA), and the Office of the Secretary of Transportation (OST). DOT has in its possession and control the records sought by Sierra Club and is therefore subject to FOIA under 5 U.S.C. § 552(f).

## STATUTORY FRAMEWORK

19.     The Freedom of Information Act was enacted to protect citizens' "right to be informed about what their government is up to." *U.S. Dep't of Just. v. Reporters Comm. for Freedom of the*

*Press*, 489 U.S. 749, 773 (1989) (internal quotations omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). The statute was intended "to permit access to official information long shielded unnecessarily from public view and … to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *EPA v. Mink*, 410 U.S. 73, 80 (1973).

20.    FOIA requires that federal agencies promptly release requested records in their possession to the public, unless a statutory exemption applies. 5 U.S.C. § 552(a)-(b).

21.    To make it easier for public interest groups like Sierra Club to access government records, FOIA requires agencies to provide documents without charge or at a reduced charge where "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552 (a)(4)(A)(iii); *see also* 49 C.F.R. § 7.43(c).

22.    Within twenty business days of an agency's receipt of a FOIA request, the agency must determine whether responsive documents exist and whether it will release them. 5 U.S.C. § 552(a)(6)(A)(i). The agency must "immediately notify" the requester of "such determination and the reasons therefor." *Id.* § 552(a)(6)(A)(i)(I).

23.    Agencies must make reasonable efforts to search for records in a manner that is reasonably calculated to locate records that are responsive to the FOIA request. 5 U.S.C. § 552(a)(3)(C)-(D). Agency records subject to FOIA are those over which an agency has "custody" and "control." *U.S. Dep't of Just. v. Tax Analysts,* 492 U.S. 136, 144-145 (1989).

24.     In addition, FOIA requires DOT to, upon request, provide status updates on FOIA requests, including "an estimated date on which the agency will complete action on the request." 5 U.S.C. § 552(a)(7)(B)(ii).

25.     If an agency withholds responsive records, in whole or in part, FOIA puts the burden on the agency to demonstrate that an exemption applies and that it outweighs FOIA's policy of disclosure. *See, e.g.*, 5 U.S.C. § 552(a)(4)(B); *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (stating FOIA's "strong presumption in favor of disclosure" places burden on agency to justify any withholdings or redactions). Even if an exemption applies, an agency may only withhold responsive records if "the agency reasonably foresees that disclosure would harm an interest protected by an exemption." 5 U.S.C. § 552(a)(8)(A)(i)(I).

26.     If the agency fails to comply with the statutory time limits, the requester is deemed to have exhausted their administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i); 552(a)(6)(E)(ii)(I)–(iii). District courts may enjoin an agency from withholding agency records and "order the production of any agency records improperly withheld." *Id*. § 552(a)(4)(B).

## STATEMENT OF FACTS

*Background on DOT Electric Vehicle Infrastructure, Charging, and Low-Carbon Programs and Funding Freeze*

27.     Congress established the National Electric Vehicle Infrastructure Formula Program (NEVI) through the bipartisan Infrastructure Investment and Jobs Act of 2021 (Infrastructure Act), appropriating $5 billion for the 50 states, Puerto Rico, and the District of Columbia to build a nationwide network of fast and reliable electric vehicle charging stations. Pub. L. No. 117–58, 135 Stat. 429, 1421. Congress directed the Secretary of Transportation to allocate these funds over the period from 2022 and 2026. 135 Stat. at 1421.

28.     The Infrastructure Act also created the Charging and Fueling Infrastructure (CFI) Discretionary Grant Program, which provides $2.5 billion in funding to DOT between 2022 and 2026 to deploy publicly accessible electric vehicle charging infrastructure. 135 Stat. 445.

29.     The Inflation Reduction Act (IRA) of 2022 established the Low-Carbon Transportation Materials (LCTM) Grants program, which authorized $2 billion in funding for DOT to distribute to State Departments of Transportation, Tribes, Metropolitan Planning Organizations, and other agencies for procurement of lower-emission construction, including steel, concrete, and asphalt. Pub. L. No. 117-169, 136 Stat. 1818 (2022).

30.     On January 20, 2025, the new Presidential administration issued an Executive Order entitled "Unleashing American Energy" which purports to pause funding under the IRA and Infrastructure Act.[1]

31.     Rather than distribute the funds as Congress commanded, the Executive Order directed agencies to "immediately pause the disbursement of funds appropriated through . . .[the IRA and Infrastructure Act], including but not limited to funds for electric vehicle charging stations made available through the National Electric Vehicle Infrastructure Formula Program and the Charging and Fueling Infrastructure Discretionary Grant Program, . . . ."[2]

32.     On January 27, 2025, the Office of Management and Budget issued a memorandum to the heads of departments and agencies directing them to "temporarily pause all activities related to obligation or disbursement of all Federal financial assistance."[3] The memo was rescinded two days later, after multiple lawsuits challenging the funding freeze were filed, but the Administration

---

[1] Exec. Order No. 14154, 90 Fed. Reg. 8353, 8357 (Jan. 20, 2025), https://www.govinfo.gov/content/pkg/FR-2025-01-29/pdf/2025-01956.pdf.

[2] *Id* at 8357.

[3] Matthew J. Vaeth, Acting Dir., Off. of Mgmt. and Budget, *Memorandum for Heads of Executive Departments and Agencies* at 2 (Jan. 27, 2025), https://perma.cc/3E6L-JSPD.

asserted that the funding freeze remained in effect despite the rescission, based on Trump's Executive Order.[4]

33.    On January 29, 2025, DOT issued a memorandum setting out "initial steps" to implement the "Unleashing American Energy" Executive Order, by ordering all DOT subagencies to identify everything subject to that and other executive orders within 10 days, and then initiate "all lawful actions necessary to rescind, cancel, revoke, and terminate" those programs, contracts, orders, and policy documents.[5]

34.    Also on January 29, 2025, Defendants issued an order that, among other things, purports to require, "[t]o the maximum extent permitted by law, DOT-supported or -assisted programs and activities . . . [to] prioritize projects and goals that . . . require local compliance or cooperation with . . . goals and objectives specified by the President of the United States or the Secretary."[6]

35.    Several courts subsequently issued orders blocking the funding freeze. However, federal funds reportedly remain on hold to this date, halting or impeding numerous environmental, climate, and public health initiatives. The Democratic staff of the House and Senate Appropriations Committees compiled a tracker showing "the minimum amount of federal funding the Committees

---

[4] Jeff Stein & Tony Romm, *Trump White House rescinds order freezing federal spending, reversing course*, Wash. Post, Jan. 29, 2025, https://www.washingtonpost.com/business/2025/01/29/white-house-budget-office-spending-freeze/; Karoline Leavitt (@PressSec), X (Jan. 29, 2025, 10:40 AM) https://x.com/PressSec/status/1884672871944901034?lang=en ("This is NOT a rescission of the federal funding freeze.").

[5] *See* DOT, *Memorandum for Secretarial Officers and Heads of Operating Administrations: Implementation of Executive Orders Addressing Energy, Climate Change, Diversity, and Gender* at 1 (Jan. 29, 2025), https://www.transportation.gov/sites/dot.gov/files/2025-01/Signed%20Secretarial%20Memo_%20Implementation%20of%20Executive%20Orders%20Addressing%20Energy%20Climate%20Change%20Diversity%20and%20Gender.pdf.

[6] *See* DOT, *Order No. DOT 2100.7: Ensuring Reliance Upon Sound Economic Analysis in Department of Transportation Policies, Programs, and Activities* at 5(f) (Jan. 29, 2025), https://www.transportation.gov/mission/ensuring-reliance-upon-sound-economic-analysis-department-transportation-policies-programs.

1    believe the administration is currently freezing, cancelling, or fighting in court to block," which

2    includes all DOT competitive grant programs, and specifically NEVI funding.[7]

3    36.    In addition to freezing these three important programs, the current U.S. Secretary of

4    Transportation, Sean Duffy, has taken many consequential and controversial actions since taking

5    office, including directing his agency to rescind vehicle fuel efficiency standards, eliminating electric

6    vehicle tax incentives, eliminating New York City's congestion pricing program, and tying his

7    agency funds to communities with high marriage and birth rates.[8]

8    37.    Secretary Duffy formerly lobbied on behalf of the transportation corporations he is now

9    in charge of regulating, including the nation's three biggest air carriers.[9] Numerous other DOT

10    political appointees are former Trump campaign staffers.

11    *Sierra Club's Funding Freeze FOIA Request*

12    38.    The Sierra Club submitted the first of the two FOIA requests at issue in this Complaint on

13    February 3, 2025, seeking records related to withholding of federal funds, including directions from

14    DOT to cut NEVI, CFI, and/or LCTM funds. The request also sought external communications

15    related to the funding freeze. *See* Ex. A.

---

[7] Appropriations Committee Democrats, House Committee on Appropriations, *Trump's Unprecedented Funding Freeze Hits Communities Across America* (last updated Apr. 29, 2025), https://democrats-appropriations.house.gov/trumps-unprecedented-funding-freeze-hits-communities-across-america.

[8] DOT, Sean Duffy Sworn In as Secretary of U.S. Department of Transportation and Takes Immediate Action to Make Cars More Affordable (Jan. 28, 2025), https://www.transportation.gov/briefing-room/sean-duffy-sworn-secretary-us-department-transportation-and-takes-immediate-action; DOT, Off. of the Sec'y of Transp., *Order: Ensuring Reliance Upon Sound Economic Analysis in Department of Transportation Policies, Programs, and Activities* at 3, https://www.transportation.gov/sites/dot.gov/files/2025-01/Signed%20DOT%20Order%20re_Ensuring%20Reliance%20Upon%20Sound%20Economic%20Analysis%20in%20Department%20of%20Transportation%20Policies%20%20Programs%20and%20Activities.pdf; Letter from Sean P. Duffy to Kathy Hochul, Gov. of New York (Feb. 19, 2025), https://ops.fhwa.dot.gov/memorandum/VPPPletter_termination_021925.pdf.

[9] William J. McGee, *Why were lawmakers only lobbing softballs at Sean Duffy?*, The Hill, Feb. 3, 2025, https://thehill.com/opinion/congress-blog/5119601-sean-duffy-transportation-secretary-concerns/.

39.     Sierra Club also requested a fee waiver, providing supporting details demonstrating that "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." *See* Ex. A at 7-10; 5 U.S.C. § 552 (a)(4)(A)(iii); 49 C.F.R. § 7.43(c).

40.     The funding freeze request was assigned two separate tracking numbers from two separate DOT FOIA offices. The Office of the Secretary of Transportation (OST) assigned the request the tracking number OST-2025-1105, and the Federal Highway Administration (FHWA) assigned it the tracking number 2025-0155-HCF.

OST-2025-1105

41.     On February 6, 2025, the Secretary of Transportation acknowledged receipt and assigned the February 3 funding freeze request the FOIA tracking number OST-2025-1105. *See* Ex. B.

42.     Sierra Club followed up via email on March 3, 2025, to request an estimated completion date for the request, and received no response. *See* Ex. C. Sierra Club sent another follow-up email on March 11, 2025. *Id.*

43.     On March 12, DOT OST estimated that it could respond to the request in 6 to 8 weeks. *Id.*

44.     On a separate email string, Sierra Club requested an estimated date of completion from the agency on March 3, 11, and 21, and received no response. *See* Ex. D.

45.     On March 25, Sierra Club asked the OST FOIA officer again about the 4 to 6 weeks estimated timeline (since two weeks had passed since the agency's March 12th 6 to 8 week estimate), and explained Sierra Club had been asking for updates on a separate email string. *See* Ex. C.

46.     On March 25, the FOIA officer acknowledged they read the separate email string where Sierra Club had repeatedly requested updates, explained that "some miscommunication in my office caused a delay," and provided the estimate of "4 to 6 weeks from today." Ex. C.

47.     On April 7, Sierra Club narrowed the request, and asked the agency to expedite the release of some documents. Ex. C.

48.     On April 9, the agency denied Sierra Club's request for expedited processing, and stated that it would provide us with another update "hopefully this week." Ex C.

49.     On April 28 and May 7, Sierra Club again requested an update on the completion date. *See* Ex. C.

50.     On May 14, OST stated it would "have a more detailed update" after it meets with FHWA "later this week." Ex. C.

51.     On May 20, Sierra Club again asked for a more detailed update. *See* Ex C. Sierra Club did not receive a response.

52.     On July 3, in response to Sierra Club's request for an update on a separate FOIA request, the agency stated that for request OST-2025-1105, "we estimate that we will be able to begin producing records in a few weeks."  Ex E.

53.     On July 7, Sierra Club asked for a date certain when documents would be provided and an estimated number of pages, pointing out that the agency's 4 to 6 week estimate from March 12 had long passed. *See* Ex. E.

54.     On July 8, the agency responded with an apology and explained that "[t]here are many variables that can change over the course of a few months that change the original estimation," but did not provide Sierra Club with a date certain or an estimated number of pages. Ex. E.

55.     Under the FOIA statutory deadlines, DOT was required to respond to Sierra Club's fee waiver request and issue a final determination by March 4, 2025, indicating whether responsive

documents to Sierra Club FOIA request exist and whether it will release them. 5 U.S.C. §§ 552(a)(4)(A)(viii), (a)(6)(A)(i); 49 C.F.R. § 7.43(f).

56.    As of the date of this Complaint, DOT has not issued a final determination as to whether it will respond to OST-2025-1105, nor produced any responsive documents, in violation of 5 U.S.C. § 552(a)(6)(A)(i). DOT has also failed to respond to Sierra Club's request for a fee waiver.

2025-0155-HCF

57.    On February 5, 2025 FHWA acknowledged the February 3 funding freeze request and assigned it the FOIA tracking number 2025-0155-HCF. *See* Ex. F.

58.    On June 9, and July 1, Sierra Club requested an estimated date of completion and a status update on the request, and received no response. *See* Ex. G.

59.    On July 9, 2025, FHWA notified Sierra Club that "most responsive records, if they exist, would likely reside in the Office of the Secretary of Transportation (OST). As such, your request has been reassigned to OST for action, and you will receive a response from OST directly." Ex. H.

60.    Under the FOIA statutory deadlines, DOT was required to respond to Sierra Club's fee waiver request and issue a final determination by March 4, 2025, indicating whether responsive documents to Sierra Club's FOIA request exist and whether it will release them. 5 U.S.C. §§ 552(a)(4)(A)(viii), (a)(6)(A)(i); 49 C.F.R. § 7.43(f).

61.    As of the date of this Complaint, DOT has not issued a final determination as to whether it will respond to 2025-0155-HCF, nor produced any responsive documents, in violation of 5 U.S.C. § 552(a)(6)(A)(i). DOT has also failed to respond to Sierra Club's request for a fee waiver.

*Sierra Club's External Communications FOIA Request*

62.    On March 12, 2025, Sierra Club submitted a second FOIA request to DOT seeking external communications between DOT's senior political staff or their administrative assistants and

1    people connected to fossil fuel and other regulated industries, as well as right-wing political interests

2    and media outlets, identified by a list of email domain names attached to the request. *See* Ex. I.

3        63.    Sierra Club also requested a fee waiver, providing supporting details demonstrating that

4    "disclosure of the information is in the public interest because it is likely to contribute significantly to

5    public understanding of the operations or activities of the government and is not primarily in the

6    commercial interest of the requester." Ex. I at 6-9; 5 U.S.C. § 552 (a)(4)(A)(iii); 49 C.F.R. § 7.43(c).

7        64.    DOT assigned this request two tracking numbers from two separate DOT FOIA offices.

8    The National Highway Traffic Safety Administration (NHTSA) assigned the request the tracking

9    number NHTSA-250313-012, and the Office of the Secretary of Transportation (OST) assigned it the

10    tracking number OST-2025-1200.

11    <u>NHTSA-250313-012</u>

12        65.    On March 13, 2025, NHTSA acknowledged the March 12 external communications

13    request and assigned it the tracking number NHTSA-250313-012. *See* Ex. J.

14        66.    On July 1, Sierra Club requested a status update and an estimated date of completion, and

15    received no response. *See* Ex. K.

16        67.    Under the FOIA statutory deadlines, DOT was required to respond to Sierra Club's fee

17    waiver request and issue a final determination by April 9, 2025, indicating whether responsive

18    documents to Sierra Club FOIA request exist and whether it will release them. 5 U.S.C. §§

19    552(a)(4)(A)(viii), (a)(6)(A)(i); 49 C.F.R. § 7.43(f).

20        68.    As of the date of this Complaint, DOT has not issued a final determination as

21    to whether it will respond to NHTSA-250313-012 nor produced any responsive

22    documents, in violation of 5 U.S.C. § 552(a)(6)(A)(i). DOT has also failed to respond to

23    Sierra Club's requests for a fee waiver.

24

OST-2025-1200

69.     On March 17, 2025, DOT OST acknowledged the March 12 external communications request and assigned it the tracking number OST-2025-1200. *See* Ex. L.

70.     On July 1, 2025, Sierra Club requested a status update and an estimated date of completion. *See* Ex. E.

71.     On July 3, 2025, the agency estimated "several months" to produce records, without providing a date. Ex E.

72.     Under the FOIA statutory deadlines, DOT was required to respond to Sierra Club's fee waiver request and issue a final determination by April 9, 2025, indicating whether responsive documents to Sierra Club FOIA request exist and whether it will release them. 5 U.S.C. §§ 552(a)(4)(A)(viii), (a)(6)(A)(i); 49 C.F.R. § 7.43(f).

73.     As of the date of this Complaint, DOT has not issued a final determination as to whether it will respond to OST-2025-1200 nor produced any responsive documents, in violation of 5 U.S.C. § 552(a)(6)(A)(i). DOT has also failed to respond to Sierra Club's requests for a fee waiver.

*DOT's History of Delay on Sierra Club FOIA requests*

74.     Sierra Club has experienced years-long delays in obtaining FOIA records from DOT. Notably, DOT has yet to complete its response to a separate Sierra Club FOIA request submitted in 2022, despite multiple follow-up inquiries from Sierra Club and repeated assurances from the agency that production was forthcoming. *See* Ex. M. That FOIA request is not at issue in this Complaint.

**FIRST CAUSE OF ACTION**

**Failure to Comply with Mandatory Determination Deadline**

75.     Sierra Club re-alleges and incorporates by reference all the foregoing paragraphs in this Complaint.

76.     Sierra Club submitted two separate FOIA requests to DOT (which were assigned four different tracking numbers), properly requesting records within DOT's custody and control.

77.     Defendant DOT is an agency subject to FOIA and must process FOIA requests according to the requirements of FOIA and agency regulations.

78.     FOIA requires the agency to issue a determination within twenty business days after receipt of a request, as to whether it will comply with the records request, including providing a notice of rights and the reasons for the determination. 5 U.S.C.§ 552(a)(6)(A)(i).

79.     FOIA further requires the agency to provide a complete response and "promptly" release the requested agency records. 5 U.S.C. § 552(a)(3)(A).

80.     More than twenty business days have passed since DOT received Sierra Club's February 3, 2025, and March 12, 2025, requests.

81.     DOT has failed to provide Sierra Club with final and complete determinations on its February 3 Funding Freeze and March 12 External Communications requests, in violation of FOIA, 5 U.S.C. § 552(a)(6)(A)(i).

82.     DOT has failed to produce documents responsive to Sierra Club's February 3 Funding Freeze and March 12 External Communications requests, in violation of 5 U.S.C. § 552(a)(3)(A).

83.     Sierra Club has exhausted the applicable administrative remedies, and is otherwise entitled to obtain the requested records.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

## SECOND CAUSE OF ACTION

### Failure to Respond to Fee Waiver Requests

84.    Sierra Club re-alleges and incorporates by reference all the foregoing paragraphs in this Complaint.

85.    Both of Sierra Club's FOIA requests include a detailed fee waiver request demonstrating that Sierra Club meets the criteria to qualify for a fee waiver. *See* Ex. A at 7-10; Ex. I at 6-9; 5 U.S.C. § 552 (a)(4)(A)(iii); 49 C.F.R. § 7.43(c).

86.    DOT failed to reply to Sierra Club's FOIA requests, including the corresponding fee waiver requests, within the 20-day time limit.

87.    Sierra Club has exhausted the applicable administrative remedies.

88.    DOT has not given Sierra Club written notice of unusual circumstances, and no unusual or exceptional circumstances exist that might excuse a late response. 5 U.S.C. § 552(a)(4)(A)(viii)(II); 49 C.F.R. § 7.43(f).

89.    Because Sierra Club meets the criteria to qualify for a fee waiver and because DOT failed to comply with FOIA's statutory deadlines, DOT must provide Sierra Club with responsive records without assessing any fees, and in no event any search or duplication fees. 5 U.S.C. § 552 (a)(4)(A)(iii); *id.* § 552(a)(4)(A)(viii).

## THIRD CAUSE OF ACTION

### Failure to Promptly Disclose Responsive Records

90.    Sierra Club re-alleges and incorporates by reference all the foregoing paragraphs in this Complaint.

91.    DOT has not promptly disclosed records that are responsive to Sierra Club's February 3 and March 12, 2025 FOIA requests. 5 USC § 552(a)(3)(A).

92.    DOT has not asserted that FOIA's statutory exemptions apply to the records that Sierra Club seeks.

93.    DOT has thereby violated FOIA's requirement that the agency promptly provide responsive, non-exempt records to requesters. 5 U.S.C. § 552(a)(3).

94.    Unless enjoined and made subject to a declaration of the Sierra Club's legal rights by this Court, DOT will continue to violate FOIA and Sierra Club's right to receive public records.

**FOURTH CAUSE OF ACTION**

**Failure to Conduct an Adequate Search**

95.    Sierra Club re-alleges and incorporates by reference all the foregoing paragraphs in this Complaint.

96.    DOT is required to process FOIA requests in compliance with 5 U.S.C. § 552(a)(3).

97.    DOT has not conducted searches that are reasonably calculated to locate all records that are responsive to Sierra Club's February 3 and March 12, 2025 FOIA requests.

98.    DOT has therefore violated FOIA's requirements. 5 U.S.C. § 552(a)(3).

99.    Unless enjoined and made subject to a declaration of Sierra Club's legal rights by this Court, DOT will continue to violate FOIA and Sierra Club's right to receive public records.

**FIFTH CAUSE OF ACTION**

**Unlawful Withholding of Non-Exempt Records**

100.    Sierra Club re-alleges and incorporates by reference all the foregoing paragraphs in this Complaint.

101.    DOT has a statutory duty to produce all responsive records that are not subject to FOIA's exemptions. 5 U.S.C. § 552(d).

102.    On information and belief, DOT possesses documents responsive to Sierra Club's February 3 and March 12, 2025 FOIA requests.

103.    DOT has violated FOIA by unlawfully withholding non-exempt records that are responsive to Sierra Club's February 3 and March 12, 2025 FOIA requests.

104.    Sierra Club has exhausted the applicable administrative remedies, and is otherwise entitled to obtain the requested records.

105.    Unless enjoined and made subject to a declaration of Sierra Club's legal rights by this Court, DOT will continue to violate FOIA and Sierra Club's right to receive public records.

## SIXTH CAUSE OF ACTION

### Failure to Provide an Estimated Date of Completion

106.    Sierra Club re-alleges and incorporates by reference all the foregoing paragraphs in this Complaint.

107.    DOT is required to provide Sierra Club with an estimated date on which it will complete action on each FOIA request. 5 U.S.C. § 552(a)(7)(B).

108.    The vague estimates DOT provided for completing Sierra Club's requests do not comply with the statutory requirement to provide an estimated date of completion.

109.    DOT has failed to provide Sierra Club with a good-faith estimated date of completion for its February 3 and March 12, 2025, requests, including after Sierra Club requested estimates for each request.

110.    Sierra Club has exhausted the applicable administrative remedies. 5 U.S.C. § 552 (a)(6)(C)(i).

111.    Unless enjoined and made subject to a declaration of Sierra Club's legal rights by this Court, DOT will continue to violate FOIA and Sierra Club's right to receive an estimated date of completion for its FOIA requests.

## PRAYER FOR RELIEF

WHEREFORE, Sierra Club respectfully requests that this Court enter judgment against DOT as follows:

1.      Declare that DOT has violated FOIA by failing to provide estimated dates of completion of Sierra Club's FOIA requests;

2.      Declare that DOT has violated FOIA by failing to issue timely final determinations upon Sierra Club's FOIA requests;

3.      Declare that DOT has violated FOIA by failing to promptly produce non-exempt records responsive to Sierra Club's FOIA requests;

4.      Order that DOT conduct an adequate search for any and all records responsive to Sierra Club's FOIA requests and demonstrate that it diligently searched for and identified responsive documents;

5.      Order that DOT immediately produce the requested records to Sierra Club at no cost;

6.      Order DOT to produce an index identifying any documents or parts thereof that it withholds and the basis for the withholdings, in the event that DOT determines that certain records are exempt from disclosure;

7.      Retain jurisdiction over this matter to rule on any assertions by DOT that certain records are exempt from disclosure;

8.      Award Sierra Club its costs and reasonable attorneys' fees; and

9.      Grant such other and further relief as the Court deems just and proper.

1    Dated: July 24, 2025                                    Respectfully submitted,

2                                                             */s/ Andrea Issod*
3                                                            Andrea Issod (CA Bar No. 230920)
4                                                            SIERRA CLUB
5                                                            2101 Webster Street, Suite 1300
6                                                            Oakland, CA 94612
7                                                            andrea.issod@sierraclub.org
8                                                            Telephone: (415) 977-5544
9
10                                                           Jim Dennison (CO Bar No. 52843)
11                                                           *Pro Hac Vice* Application Forthcoming
12                                                           SIERRA CLUB
13                                                           1650 38th St., Suite 103W
14                                                           Boulder, CO 80301
15                                                           jim.dennison@sierraclub.org
16                                                           Telephone: (435) 232-5784
17

18                                                           *Attorneys for Plaintiff Sierra Club*